MENDLOVIC, Appellant,

v.

LIFE LINE SCREENING OF AMERICA, LTD., et al., Appellees.

[Cite as *Mendlovic v. Life Line Screening of Am.,
Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88850.

Decided Sept. 13, 2007.

48

**50**

Mansour, Gavin, Gerlack & Manos Co., L.P.A., Jeffrey M. Embleton, and Amy L. Phillips, for appellant.

Cavitch, Familo, Durkin & Frutkin Co., L.P.A., Michael C. Cohen, Ronald D. Holman II, and Sara E. DeCaro, for appellees.

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Plaintiff-appellant, Nata Mendlovic, appeals from a decision of the common pleas court that granted defendants-appellees, Life Line Screening of America, Ltd., Colin Scully, Timothy Phillips, David Campbell, and Dorne Chadsey's (collectively referred to as "Life Line") motion for summary judgment on Mendlovic's claims. Upon review, we conclude that there are no genuine issues of material fact and that Life Line is entitled to judgment as a matter of law on Mendlovic's claims. Accordingly, we affirm the trial court's decision.

{¶ 2} A review of the record reveals the following facts: Life Line is a Cleveland-based company that provides mobile ultrasound screening for individuals with vascular disease. Specifically, teams of five to six employees travel around in a van and conduct screenings at churches, schools, recreation centers, and similar venues. After a client is screened, test results are sent to a physician for analysis. Those results are sent to Life Line for processing, and each participant is sent a letter from Life Line with the results. At all relevant times, Life Line was owned by Colin Scully and Timothy Phillips, who served as the Chairman/CEO and Executive Vice President, respectively, of the company.

{¶ 3} Mendlovic, a 48–year–old female, was hired as the operations manager at Life Line on September 1, 2000. Her duties included writing up procedures for the field (ultrasound), working with the various departments to create procedures

or protocols (staffing), and supporting the staff with ultrasound and sales (field support).

{¶ 4} On September 1, 2001, Mendlovic was promoted to director of national operations. As a director, Mendlovic was still responsible for ultrasound, staffing, and field support but was given additional responsibilities in results processing and working with regional managers. Mendlovic spent most of her time working in field support and operations. Mendlovic was recognized as a valuable employee to Life Line and was awarded a company trip in 2003 based upon her performance and contribution to the company. In addition to Mendlovic, there were two other female directors, Dinah Vince and Susan Vetrone.

{¶ 5} In September 2003, David Campbell was hired as chief operating officer at Life Line and became Mendlovic's direct supervisor. Around the same time, Life Line began experiencing problems with results processing. Specifically, the company was receiving numerous complaints (more than 100 per day) from customers who were not receiving their health-screening results. Campbell hired Tony Bodak in October 2003 as a project consultant to help analyze and fix the problems. Within several months, Bodak implemented new procedures and participants began receiving their results in a timelier manner. Based upon Bodak's work performance, Life Line created a new position for him in customer service. Accordingly, in March 2004, Bodak was hired as the director of service excellence.

{¶ 6} Mendlovic claims that shortly after Campbell became her supervisor, he began making demeaning comments to her in front of other employees. Mendlovic refers to three specific occasions. First, in a company meeting, Campbell allegedly yelled at her when she mentioned a specific employee who was considered "high risk." Specifically, Mendlovic says that Campbell "barked" at her to not "red flag" anyone. Next, at another company meeting, Campbell allegedly yelled at her and blamed her for bad weather. Specifically, Campbell told her he would not stand for excuses from the field technicians about getting to their job sites late because of bad weather and wanted "[her] to do something about it." Finally, Mendlovic stated that Campbell challenged her request for vacation in June 2004 and stated that it was too busy at Life Line for her to take a vacation. Mendlovic stated that Dorne Chadsey, the vice president of human resources, had already approved her vacation request.

{¶ 7} Following this encounter with Campbell, Mendlovic complained to Scully that she felt that Campbell did not like her. She complained that Campbell seemed to like Bodak more than her and that she wanted to have more business-related meetings with Campbell. Scully told Mendlovic that he would look into the matter and urged Mendlovic to speak directly to Campbell about her concerns.

{¶ 8} Shortly after Mendlovic's meeting with Scully, she met with Campbell to discuss the situation. She told him that he was condescending to her and that he was too hard on her. Campbell responded by saying that he did not feel he was acting that way toward her.

{¶ 9} In June 2004, Life Line began to open operations in Canada. Campbell assigned the operational duties of securing the van and equipment to Chadsey. Mendlovic claims that she requested to be involved with this assignment but that her request was denied by Campbell.

{¶ 10} On August 5, 2004, Campbell and Chadsey met privately with Mendlovic and advised her that her position in the company was being eliminated. Campbell informed Mendlovic that the company had reevaluated the organizational chart of the management of the company and had decided to restructure the management positions. Campbell informed Mendlovic that there were "too many Directors, that her position overlapped with the Field Operations position held by Tim Cajka," and that her position was "not being utilized in an effective manner." Mendlovic was offered a separation agreement that contained severance pay and told to leave work immediately and spend time with her family. She was encouraged to return the following week to help with the transition but did not do so.

{¶ 11} On August 6, 2004, Campbell sent the following email to the employees of the company notifying them about the management restructuring:

{¶ 12} "Yesterday, the Director of Operations position was eliminated, effective immediately. Nata Mendlovic will be transitioning her responsibilities to other members of the management team, including myself, over the next week.

{¶ 13} "Tony Bodak, Director, Service Excellence, will assume responsibility for Results Processing (Stephanie Wilson) and Field Service Support (FSS)(Kerrie Arnold). Karen Gajda, Logistics Coordinator, will rejoin FSS and report to Kerrie. There are no changes to the field organization headed by Tim Cajka and the Regional Managers.

{¶ 14} "Nata has been with the company for the past four years. On behalf of the company, we thank her for her contributions to Life Line and wish her well in her next endeavor."

{¶ 15} On October 22, 2004, Mendlovic filed this complaint against Life Line alleging claims of age discrimination, gender discrimination, retaliation, intentional infliction of emotional distress, and wrongful discharge in violation of public policy.

{¶ 16} On March 6, 2006, Life Line filed a motion for summary judgment, which was granted by the trial court on September 21, 2006. It is from this

decision that Mendlovic now appeals and raises eight assignments of error for our review.

{¶ 17} "I. The trial court erred to the prejudice of plaintiff-appellant in granting summary judgment to defendants-appellees on plaintiff-appellant's claim of age discrimination.

{¶ 18} "II. The trial court erred to the prejudice of plaintiff-appellant in granting summary judgment to defendants-appellees on plaintiff-appellant's claim of gender discrimination.

{¶ 19} "III. The trial court erred to the prejudice of plaintiff-appellant in granting summary judgment to defendants-appellees on plaintiff-appellant's claim of retaliation.

{¶ 20} "IV. The trial court erred to the prejudice of plaintiff-appellant in granting summary judgment to defendants-appellees on plaintiff-appellant's claim of intentional infliction of emotional distress.

{¶ 21} "V. The trial court erred to the prejudice of plaintiff-appellant in granting summary judgment to defendants-appellees on plaintiff-appellant's claim of violation of public policy.

{¶ 22} "VI. The trial court erred to the prejudice of plaintiff-appellant in holding that plaintiff-appellant did not present a prima facie case of discrimination on the basis that plaintiff-appellant was not replaced by a person outside the protected class, where plaintiff-appellant is a 46–year–old female and was replaced by a male in his 30's.

{¶ 23} "VII. The trial court erred to the prejudice of plaintiff-appellant in holding that defendant-appellees' purported legitimate business reason for terminating plaintiff-appellant's employment was not pretextual, where significant, probative evidence was presented to show that there was inconsistent illogical and contradictory reasons for its decision, and the reason given was factually untrue, thereby creating a genuine issue of material fact for a jury's determination.

{¶ 24} "VIII. The trial court erred to the prejudice of plaintiff-appellant in holding that defendants-appellees did not retaliate against plaintiff-appellant, where plaintiff-appellant was fired after complaining of gender-based discrimination and a hostile work environment, thereby creating a genuine issue of material fact for a jury's determination."

{¶ 25} In these assignments of error, Mendlovic claims that the trial court erred in granting summary judgment in favor of Life Line because genuine issues of material fact existed concerning her claims for age discrimination, gender

discrimination, retaliation, intentional infliction of emotional distress, and violation of public policy.

{¶ 26} An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 27} Summary judgment is appropriate when it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 28} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., that affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing that there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶ 29} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Life Line's favor was appropriate.

Age Discrimination (Assignments of Error I and VI)

Gender Discrimination (Assignment of Error II and VIII)

■ {¶ 30} To set forth a prima facie case of age discrimination in an employment-discharge action, the employee must show (1) that she was a member of the statutorily protected class, (2) that she was discharged, (3) that she was qualified for the position, and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807.

■ {¶ 31} To set forth a prima facie case of gender discrimination in an employment-discharge action, the employee must show (1) that she was a

member of the statutorily protected class, (2) that she suffered an adverse employment action, (3) that she was qualified for the position, and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 32} Once a prima facie case of age or gender discrimination is established, the employer may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. The employee must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. The employee's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987. Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. To meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333, 2001 WL 60035.

{¶ 33} Here, Mendlovic meets the first three elements of both an age- and gender-discrimination claim, since she is a female, she was 48 years old, she was terminated from her position, and she was qualified for her position. However, she fails to meet the final element, since she was not "replaced" by a male or a person younger than her. A person is "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 666 N.E.2d 257; *Abrams v. Am. Computer Technology* (2006), 168 Ohio App.3d 362, 860 N.E.2d 123; *Mazzitti v. Garden City Group, Inc.*, Franklin App. No. 06AP–850, 2007-Ohio-3285, 2007 WL 1847688; *Lilley v. BTM Corp.* (C.A.6, 1992), 958 F.2d 746, 752 ("spreading the former duties of a terminated employee among the remaining employees does not constitute re-placement").

{¶ 34} Here, Life Line did not hire a male or a new employee or reassign an existing employee to replace Mendlovic. Rather, Life Line reassigned Mendlovic's job responsibilities among several other people within the company. Specifically, Tony Bodak and Kerrie Arnold assumed Mendlovic's duties in field support and scheduling, Tony Bodak and Stephanie Wilson assumed Mendlovic's duties in

results processing and field support, and Dorne Chadsey in Human Relations assumed Mendlovic's duties with regard to team relations and recruiting.

{¶ 35} While it is true that Bodak, a younger male, did assume some of Mendlovic's duties, he did not solely replace her position at Life Line. Rather, Bodak, along with two other female employees, assumed some of Mendlovic's duties with regard to results processing and field support, in addition to his own existing job duties in customer service. See, id.; *Stipkala v. Am. Red Cross* (C.A.6, 2000), 2000 WL 712378 (plaintiff not replaced when a younger employee assumed some, but not the majority, of plaintiff's former duties).

{¶ 36} Assuming, arguendo, that Mendlovic has established a prima facie case of either age or gender discrimination, the record is devoid of any credible evidence that Life Line's decision to reorganize management and eliminate Mendlovic's position was merely pretextual. See *Boggs v. Scotts Co.*, Franklin App. No. 04AP–425, 2005-Ohio-1264, 2005 WL 647560 (summary judgment for employer when the evidence showed that the employee's termination was motivated by the legitimate business purpose of reducing its workforce for financial reasons). Thus, there were no genuine issues of material fact, and the trial court did not err in granting Life Line's motion for summary judgment on Mendlovic's age- and gender-discrimination claims.

{¶ 37} Assignments of error I, II, VI, and VIII are overruled.

### Retaliatory Discharge (Assignments of Error III and VII)

{¶ 38} To prove a claim of retaliation, Mendlovic must establish three elements: (1) that she engaged in protected activity, (2) that she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action. *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 727, 729 N.E.2d 813.

{¶ 39} Once an employee successfully establishes a prima facie case, it is the employer's burden to articulate a legitimate reason for its action. Id. If the employer meets its burden, the burden shifts back to the employee to show that the articulated reason was a pretext. Id.

{¶ 40} "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 510–511, 113 S.Ct. 2742, 125 L.Ed.2d 407. Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. *Powers v. Pinkerton,* Cuyahoga App. No. 76333, 2001 WL 60035.

{¶ 41} Here, Mendlovic claims that she was terminated because she complained to Scully about Campbell's attitude and treatment toward her. Specifically, Mendlovic claims that she told Scully that Campbell was not "giv[ing] her a chance" because she was a woman.[1] Scully denies that Mendlovic made such a statement to him and claims that Mendlovic merely complained that Campbell did not appear to like her and did not want to have meetings with her. Assuming arguendo that Mendlovic did make this statement to Scully, and assuming that it does fall within the protected activity detailed under R.C. 4112.01, Mendlovic cannot show a causal connection between her "protected activity" and her termination, which occurred between two to three months after she spoke with Scully. Courts have repeatedly held that intervals of two to four months between the protected activity and the adverse action are insufficient to show a causal connection. See *Aycox v. Columbus Bd. of Edn.*, Franklin App. No. 03AP–1285, 2005-Ohio-69, 2005 WL 44441; *Krickler v. Brooklyn*, Cuyahoga App. No. 85007, 2005-Ohio-2326, 2005 WL 1120009; *Boggs v. Scotts Co.*, Franklin App. No. 04–AP–425, 2005-Ohio-1264, 2005 WL 647560.

{¶ 42} Again, assuming arguendo that Mendlovic could establish a prima facie case of retaliation, Life Line adequately rebutted by submitting evidence that Mendlovic's termination was motivated by a legitimate business purpose. A plaintiff cannot prevail on a claim of retaliatory discharge if it appears from the evidence that the employer would have made the same decision regardless of plaintiff's participation in the protected activity. *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 678, 622 N.E.2d 1130.

{¶ 43} Here, in order to increase efficiency, eliminate duplication, and save money, Life Line reorganized the management of the company, eliminating Mendlovic's position and distributing her duties to other employees. Scully, Campbell, and Bodak all testified that Mendlovic was not replaced in the company; rather, four other employees assumed her managerial duties. Upon careful review of the record, and viewing the evidence in the light most favorable to Mendlovic, we conclude that Mendlovic failed to demonstrate that Life Line would not have terminated her but for her participation in the protected activity. See, also, *Boggs v. Scotts Co.*, Franklin App. No. 04–AP–425, 2005-Ohio-1264, 2005 WL 647560 (summary judgment for employer when the evidence showed that the employee's termination was motivated by the legitimate business purpose of reducing its workforce for financial reasons).

{¶ 44} Faced with summary judgment, Mendlovic failed to offer sufficient evidence that Life Line's justification for her termination was pretextual. *Powers v. Pinkerton*, Cuyahoga App. No. 76333, 2001 WL 60035. Merely speculating

---

1. Mendlovic concedes that she did not make any complaints with regard to her age.

that Scully fired her because she complained that Campbell did not like her is insufficient. Id. Accordingly, the trial court did not err in granting Life Line's motion for summary judgment on Mendlovic's claim for retaliation.

{¶ 45} Assignments of error III and VII are overruled.

### Intentional Infliction of Emotional Distress (Assignment of Error IV)

{¶ 46} In order to establish a claim of intentional infliction of emotional distress, Mendlovic must show (1) that Life Line either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to her, (2) that Life Line's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that Life Line's actions were the proximate cause of Mendlovic's psychic injury, and (4) that the mental anguish suffered by Mendlovic is serious and of a nature that no reasonable person could be expected to endure it. Burkes v. Stidham (1995), 107 Ohio App.3d 363, 375, 668 N.E.2d 982. Serious emotional distress requires an emotional injury that is both severe and debilitating. Id.

{¶ 47} To recover for intentional infliction of emotional distress in Ohio, it is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666.

{¶ 48} Here, Mendlovic claims that the following actions on the part of Life Line constituted reckless, wanton, extreme and outrageous conduct: (1) Campbell "barked" at her at a company meeting to not "red flag" anyone, (2) Campbell yelled at her and blamed her for bad weather, (3) Campbell told her it was too busy at work to take vacation, and (4) she was terminated from her job.

{¶ 49} We conclude that these allegations do not satisfy the elements of intentional infliction of emotional distress as a matter of law. None of the actions challenged by Mendlovic constitute "outrageous conduct." In addition, an employer is not liable for a plaintiff's emotional distress if the employer does no more than "insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Foster v. McDevitt (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 511 N.E.2d 403. Life Line was reorganizing and reducing its workforce for financial and efficiency

reasons. Under Ohio law, which states that employment is at-will, Life Line was entitled to terminate Mendlovic's employment, regardless of whether they knew or intended that the termination would cause her emotional distress. Id. See, also, *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254, 262, 650 N.E.2d 488; *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, 603 N.E.2d 1126. Accordingly, the trial court did not err in granting Life Line's motion for summary judgment on Mendlovic's claim for intentional infliction of emotional distress.

{¶ 50} Assignment of error IV is overruled.

### Violation of Public Policy (Assignment of Error V)

{¶ 51} To establish a claim for wrongful discharge in violation of public policy, Mendlovic must show (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in Mendlovic's dismissal would jeopardize the public policy; (3) that Mendlovic's dismissal was motivated by conduct related to the public policy; and (4) that Life Line lacked overriding legitimate business justification for the dismissal. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51.

{¶ 52} Since Mendlovic has failed to establish her discrimination and retaliation claims, she has not proved that her discharge jeopardized those public policies. Accordingly, the trial court properly granted summary judgment on her claim of wrongful discharge in violation of public policy. See *Ekstrom v. Cuyahoga Cty. Community College* (2002), 150 Ohio App.3d 169, 183, 779 N.E.2d 1067; *Cochran v. Columbia Gas of Ohio, Inc.* (2000), 138 Ohio App.3d 888, 895, 742 N.E.2d 734; *Bennett v. Roadway Express* (Aug. 1, 2001), Summit App. No. 20317, 2001 WL 866261; *Crosier v. Quikey Mfg. Co., Inc.* (Feb. 28, 2001), Summit App. No. 19863, 2001 WL 196511.

{¶ 53} Assignment of error V is overruled.

Judgment affirmed.

BLACKMON and STEWART, JJ., concur.