[Cite as *Manion v. Interbrand Design Forum, L.L.C.*, 2015-Ohio-348.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MELISSA ANN MANION | : | |
| | : | Appellate Case No. 26185 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2013-CV-4489 |
| v. | : | |
| | : | (Civil appeal from |
| INTERBRAND DESIGN FORUM, LLC | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of January, 2015.

. . . . . . . . . . .

RANDOLPH H. FREKING, Atty. Reg. No. 0009158, and JON B. ALLISON, Atty. Reg. #0073955, Freking & Betz, LLC, 525 Vine Street, Sixth Floor, Cincinnati, Ohio 45202; and
JEFFREY M. SILVERSTEIN, Atty. Reg. No. 0016948, Freking & Betz, LLC, One Elizabeth Place, Suite 220, Dayton, Ohio 45417
        Attorneys for Plaintiff-Appellant

LOWELL T. WOODS, JR., Atty. Reg. #0068768, Taft Stettinius & Hollister LLP, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Melissa (Missy) Manion appeals from the entry of summary judgment for her former employer Interbrand Design Forum, LLC on her claims of age and gender discrimination. There is no evidence that Design Forum discharged Manion because of her age or gender. We therefore affirm.

## I. FACTS

**{¶ 2}** Design Forum was founded in 1978 by Lee Carpenter as "a retail design and strategy consulting firm." (Carpenter Dep. 11). Carpenter sold the company to Interbrand in 2002, and the company changed its name to Interbrand Design Forum. Carpenter became Chairman and CEO of Interbrand North America in 2006 and stopped being involved in the day-to-day operations of Design Forum. He chose Bruce Dybvad, who was managing Interbrand's Cincinnati office, to run the Dayton office too. In 2012, Dybvad promoted Justin Wartell, who was then Design Forum's executive director of strategy and analytics, to managing director of Design Forum. Dybvad remained CEO of both the Dayton and Cincinnati offices and the one to whom Wartell reported.

**{¶ 3}** Wartell had a "different management style and plan" than Carpenter. (Dybvad Aff. ¶ 8). Carpenter was "very financially oriented, very driven by the numbers," (Storm Dep. 16), and under him, the culture at the company was "work, work, work, work, work, regardless of your personal life," (Oakley Dep. 18). But Wartell wanted a "people first" approach to achieve not only financial growth but also, as he put it, "growth and development of our people, the growth of our culture, the growth of our client base from both a quality and diversity standpoint,

[and] the growth of our reputation in the marketplace," (Wartell Dep. 59-60). Wartell believed that his approach required a "mentality shift" away from Design Forum's traditional focus on the "financials as a be all and end all." (*Id*. at 60-61). To that end, Wartell asked all management members "to evaluate their teams, make changes to their approach, and evolve with a new model." (Dybvad Aff. ¶ 8). Wartell also pushed Design Forum's executive leadership team to "establish a more open, collaborative, transparent dialogue among [the] leadership." (Wartell Dep. 27). Wartell recognized that the entrenched views and existing culture could not be changed overnight, but he expected "the behavior of [the] leaders to start to map to a more positive cultural environment overnight." (*Id*. at 92).

{¶ 4} Manion began working as an account manager for Design Forum in 1993 and by 2012 had worked her way up to Senior Vice President and Director of Account Management and was a member of the executive leadership team. She had historically received good performance evaluations. Carpenter believed that she was "very important" in the company's growth, (Carpenter Dep. 15), and made "significant" contributions, (*Id*. at 16). But Dybvad's 2011 performance evaluation of Manion shows that her interactions with her account team members needed improvement. In the comments section, Dybvad wrote, "My comment is to warm up a bit and not be so mechanical with your team. Try to digest things positively before reacting with others." (Manion Dep. 92). Another comment says that, "though Missy has a strong focus on Interbrand standards and goals of the company as well as handles herself in a very professional manner, she can often come across as a negative person." (*Id*. at 93). This issue had come up before, but Manion's thought was that "it's just the serious nature of [her] personality." (*Id*.). One last evaluation comment from Dybvad: "I would encourage Missy to focus more attention on how

to grow and nurture her team both personally and professionally, take time to get to know them and what makes them passionate." (*Id.*).

**{¶ 5}** Design Forum employees also received performance appraisals from their fellow employees. In 2011, Diane Borton, also a member of the executive leadership team, and Tiffany Bruening, a member of Manion's team, each wrote an appraisal of Manion. These appraisals are attached to an affidavit supporting Design Forum's summary judgment motion, and the affidavit states that the appraisals are "true and accurate copies," (Storm Aff. ¶ 8). They are properly considered here despite not being specifically mentioned in Civ.R. 56(C). Documents not specifically authorized by the rule " 'may be introduced as evidentiary material * * * through incorporation by reference in a properly framed affidavit.' " *U.S. Bank Natl. Assn. v. Higgins*, 2d Dist. Montgomery No. 24963, 2012-Ohio-4086, ¶ 13, quoting *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶ 17 (1st Dist.). Civ.R. 56(E) provides that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." This requirement "is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions." *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 194 Ohio App.3d 644, 2011-Ohio-2681, 957 N.E.2d 790, ¶ 30 (2d Dist.), *rev'd on other grounds*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214. Both appraisals note Manion's narrow financial focus and her failure to develop positive relationships with others. Borton wrote that Manion's "focus can be very limited to financials (though important) without broadening her view to understand how the decisions can affect the broader group and their productivity." (Storm Affidavit, ¶ 8, Exhibit 1). Borton also wrote that Manion "can improve on her internal relationships by having

more candid discussions with employees that don't always focus on tasks and financials[:]"

> I don't feel she truly has an understanding of her team members from the perspective of their personal and professional development. She lacks mentoring skills as a leader and does not view training as a priority. Missy tends not to listen to others with the intent to understand, but instead listens with the intent to reply, which leaves the impression that she is disregarding what is being said.

(*Id*.). Bruening wrote in her appraisal that "as a manager [Manion] needs to be passionate about the work beyond just the numbers and demonstrate her enthusiasm to her team. Missy lacks the ability to nurture and develop individuals. Her criticism is sharp and she lacks the ability to balance out the negative with positive reinforcement. Because of this imbalance, her direct reports question their own ability to perform their job." (*Id*.). Bruening also wrote that Manion "does not build relationships with her team. * * * I would encourage Missy to take a more vested interest in the individuals on her team and get to know them. * * * Missy does not take an interest in her team beyond their ability to forecast their business." (*Id*.).

{¶ 6} Even before Wartell was promoted, he was not Manion's favorite person–an "arrogant" "asshole" was her comment to one employee. (Oakley Dep. 31). "There was a discernible strain between them," Dybvad avers, and Manion had "expressed concern about him." (Dybvad Aff. ¶ 9). Manion and Wartell "had different perspectives and conflicting management styles," (*id*. at ¶ 10), "fundamentally different styles and mindsets," (Millard Aff. ¶ 17), "a fundamental difference of personalities and styles," (Parrett Aff. ¶ 18). Manion saw that "change was his motto," (Manion Dep. 148): "[I]t was all about change. * * * [I]t was a message that he was trying to communicate to the broader organization that things are changing, you are more

important to me, people are number one, and it was a focus. It was definitely a tremendous focus on his part." (*Id*. at 149).

{¶ 7} Wartell saw Manion as untrusting, insular, and too focused on the company's financial performance. He believed that Manion did not trust other leaders: "She didn't empower them to lead and be successful. * * * I would also say that the relentless focus on financial performance at all costs created situations where if others weren't oriented to that mentality as well, that she did not believe they were trusted or trustworthy." (Wartell Dep. 59). And in part because of this, she was reluctant to collaborate or work with others. Wartell believed that Manion needed to change her focus:

> [O]ne of the things that Missy and I talked about long before the performance plan, and even before my assumption of the managing director role, was the relentlessness with which she focused on financially focused issues.
>
> * * *
>
> It was the predominant element of her team meetings. It was the topic that came up most frequently when talking to her team; and it came always at the expense of a level of empathy, personal development, support for her direct reports.

(*Id*. at 93). It was Wartell's view that Manion needed to "deprioritiz[e] financials in order to amplify other characteristics that we know would lead to long-term financial success." (*Id*.).

{¶ 8} But Manion was unable or unwilling to adopt the new model. One of her team members recalled that when Design Forum was sold to Interbrand, Manion "struggled to make

the transition into the 'Interbrand model'" of servicing clients. (Millard Aff. ¶ 11). Another of her team members believed that "Missy Manion was beginning/early Design Forum-not future Interbrand Design Forum. Missy Manion lacked vision for the future. She did not want to work with clients any differently than she used to under the antiquated Design Forum model." (Parrett Aff. ¶ 8).

{¶ 9}    In November 2012, Wartell asked Manion to complete a performance plan and to come up with a detailed approach to make the necessary changes in her leadership of, and performance with, her team. Manion viewed this request as disciplinary in nature. While she gave Wartell two separate plans, he found them both lacking. Several weeks after asking Manion to come up with a plan for change, Wartell spoke with members of her team, and they told him that there had been "no meaningful difference" in Manion's leadership. (Wartell Dep. 139).

{¶ 10}    Based on this feedback from her team members, and his own dissatisfaction with her repeated failure to embrace his vision and direction, Wartell told Manion, in early January 2013, that she was being let go. Six months later, Manion filed suit against Design Forum, claiming age and gender discrimination. On Design Forum's motion, the trial court entered summary judgment on both claims.

{¶ 11}    Manion appealed.

## II. ANALYSIS

{¶ 12}    Chapter 4112 of the Ohio Revised Code prohibits age and sex discrimination in employment. *See* R.C. 4112.14(A) (age discrimination) and R.C. 4112.02(A) (sex discrimination). The burden and proof framework that applies to federal Title VII employment discrimination cases, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973), also applies to Chapter 4112 discrimination cases. *See Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996). First, the plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination. Second, if the plaintiff does so, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas* at 802. And third, if the defendant satisfies its burden, the plaintiff must then prove, by a preponderance of the evidence, that the defendant's reason was merely "a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), citing *McDonnell Douglas* at 804. Still, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

{¶ 13} "In a case decided on summary judgment, we must determine whether an issue of material fact remains to be litigated, whether the moving party is entitled to judgment as a matter of law, and whether when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach a conclusion that is adverse to the nonmoving party." (Citations omitted.) *Snyder v. Ohio Dept. of Natural Resources*, 140 Ohio St.3d 322, 2014-Ohio-3942, 18 N.E.3d 416, ¶ 20; *see also* Civ.R. 56(C). The first assignment of error challenges the entry of summary judgment on Manion's age discrimination claim. The trial court concluded that Manion failed to present any evidence to show that Design Forum's legitimate, nondiscriminatory reasons for discharging her–that she was resistant to the direction that Wartell was taking the company and that she was not meeting his expectations for the development and leadership of her team–were pretext for age discrimination. To show pretext, "the plaintiff must produce sufficient

evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him." (Citation omitted.) *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). "Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer." *Surry v. Cuyahoga Community College*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, ¶ 24 (8th Dist.). Rather, "[t]o meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue." (Citation omitted.) *Id*.; *see also McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 23 (saying substantially the same thing); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). The second assignment of error challenges the entry of summary judgment on the sex discrimination claim. The trial court concluded that Manion failed to establish the fourth element of a prima facie case–that she was replaced by a male or treated differently than a similarly situated male, *see Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 54-55, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 31 (8th Dist.). With respect to both of these claims, said the trial court, Manion failed to present any evidence, outside of her own assumptions and conjecture that age or gender played a factor in her discharge. The court said that there was simply a personality conflict between Manion and Wartell–they just didn't get

along. (We view this observation as simply a comment by the trial court, an opinion, not the legitimate, nondiscriminatory reason for Manion's discharge given by Design Forum.)

{¶ 14} We think that the evidence—depositions and affidavits from Design Forum employees—overwhelmingly supports Design Forum's proffered reasons for discharging Manion. We note that, when Manion, 56 years old then, left, Wartell chose another woman, Diane Borton, age 45, to take over her position. Also, at the time of Manion's discharge, half of the executive leadership team (including Manion), which reported to Wartell, age 31, were women, and the team's average age was 50, with none of them under 45. Yet there is no evidence that any other member of the team was discriminated against. There simply is no evidence that Manion can point to that suggests age or gender had anything to do with Wartell's decision to dismiss her._ Manion argues that he treated her differently, that he hired a male to replace her, and that he did not spend enough time meeting with her to try and help her change. But even if Wartell did these things, there is no evidence that his reason had anything to do with Manion's age or gender. That it did is merely Manion's own speculation, which her deposition testimony shows. When specifically asked why she believed her discharge was related to her age or gender, Manion replied, "I have no other choice but to believe that based on my performance with the company for twenty years and the results that I generated over those twenty years." (Manion Dep. 219).

{¶ 15} One of Manion's arguments warrants some discussion. In support of her contention that the evidence establishes a prima facie case for the fourth element of her gender discrimination claim, she argues that Tom Custer, the executive director of marketing, who also reported directly to Wartell, was a similarly situated male who was treated differently. Manion

points out that Wartell had multiple conversations with Custer about his unsatisfactory performance but did not terminate him or even ask him to develop a performance plan. But " '[t]o be "similarly situated," the employees with whom the employee makes the comparison to establish disparate treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." ' " *Griffin v. Springfield Regional Med. Ctr.*, 2d Dist. Clark No. 2012-CA-66, 2013-Ohio-1819, ¶ 24, quoting *Borad v. April Ents., Inc.*, 2d Dist. Montgomery No. 25092, 2012-Ohio-5096, ¶ 17, quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992). Here there is insufficient evidence to find that Custer's situation was similar to Manion's: no evidence that Custer's performance failings were comparable to her; no evidence of his unwillingness and failure to overcome his performance issues; no evidence that he failed to recognize, embrace, and implement the new direction and focus of Design Forum under Wartell's leadership; no evidence that Custer had a team of subordinates that he was failing to properly supervise; no evidence about whether he took immediate steps to address Wartell's concerns; and no evidence about whether his performance issues warranted a performance plan.

{¶ 16} Viewing the evidence most strongly in favor of Manion, no reasonable person could reject Design Forum's proffered reason for discharging her or infer that it intentionally discriminated against her.

{¶ 17} The two assignments of error are overruled.

{¶ 18} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissenting:

{¶ 19} This writer cannot concur with the rationale expressed by the majority on the basis of the record before us, in part, due to the manner in which the trial court performed its role in granting summary judgment in favor of the appellee as evidenced by the court's judgment entry. Therefore, I dissent.

{¶ 20} "Nothing is more basic under Civ.R. 56(C) that the trial court's function is to determine whether a genuine issue as to any material fact remains to be litigated based on an analysis of pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the case, and written stipulations of fact. Civ.R. 56(E) imposes the additional requirement that:

> 'Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence*, * * *' (Emphasis added).
>
>  * * *
>
> 'Under Rule 56(C), * * * *the judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'* (Emphasis added)."

*Philomena v. WKBN Broadcasting Corp.,* 7th Dist. Mahoning No. 85-CA-128, 1987 WL 31938, *3 (Dec.28, 1987) (Ford, J., dissenting).

{¶ 21} Once a trial judge indulges in a fact-finding process in a summary judgment undertaking, he or she easily crosses into a weighing exercise going to the ultimate truthfulness

of contested matters.   Thus, a trial judge may well eliminate a genuine issue of material fact by the very fact-finding he or she makes.   *Id.*

{¶ 22}   Generally, questions of an employer's motive and intent in discharging an employee are not susceptible to resolution in summary judgment proceedings, *see, e.g., Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001), and I find this case to be no such exception.

{¶ 23}   Focusing specifically on the summary judgment entry in this case, the following excerpt is the most pertinent, where the Court concluded in part, as follows:

"It appears to the Court that there was a personality conflict, or friction between Plaintiff and Wartell."

{¶ 24}   A close scrutiny of the foregoing language employed by the trial court in its entry appears to this writer to have unequivocally transgressed from a determination that no genuine issue of material fact exists to one of a fact-finder weighing the submission before it and entering findings of fact going to the truth or falsity of these matters.   *See Philomena* at *4 (Ford, J., dissenting).

{¶ 25}   I would find that appellant presented sufficient evidence to allow a reasonable jury to find by a preponderance of the evidence that Design Forum's proffered reasons for Manion's discharge were a mere pretext, since the proffered reasons may not have actually motivated her discharge and/or were insufficient to motivate her discharge.   A review of Dybvad's (Manion's previous supervisor) deposition testimony reveals nothing which would allow a jury to conclude that Manion was actually unable or unwilling to change as Wartell claims she was.   A jury may well conclude that Wartell came to his conclusions about Manion

based on negative stereotype that older female workers cannot or will not adapt to change. Consequently, the trial court erred in granting summary judgment to appellees on appellant's age and gender discrimination claim.

{¶ 26}  For the foregoing reasons, I would reverse the judgment of the trial court, and remand the case for further proceedings.

. . . . . . . . . .

Copies mailed to:

Randolph H. Freking
Jon B. Allison
Jeffrey M. Silverstein
Lowell T. Woods, Jr.
Hon. Timothy N. O'Connell