MITCHELL, Appellant and Cross–Appellee,

v.

INTERNATIONAL FLAVORS & FRAGRANCES, INC. et al., Appellees;

Givaudan Flavors Corporation, Appellee and Cross–Appellant.

[Cite as *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–070530 and C–070549.

Decided July 25, 2008.

Parry, Deering, Futscher & Sparks, P.S.C., and David A. Futscher; Lieff, Cabreser, Heimann & Bernstein, Kathyrn E. Barnett, and Elizabeth A. Alexander; and Humphrey, Farrington & McClain, P.C., and Kenneth B. McClain, for appellant and cross-appellee.

Dinsmore & Shohl, L.L.P., Frank C. Woodside III, J. David Brittingham, Douglas J. Feichtner, and James Adam Browning, for appellee International Flavors & Fragrances, Inc.

Vorys, Sater, Seymour & Pease L.L.P., Richard D. Schuster, and Rosemary D. Welsh, for appellee Degussa Flavors & Fruit Systems US, L.L.C.

Porter, Wright, Morris & Arthur and Joyce D. Edelman; and Mayer Brown L.L.P., Mark R. Ter Molen, and Paul M. Drucker, for appellee Mastertaste, Inc.

Thompson Hine L.L.P. and Kimberly E. Ramundo; and Morgan, Lewis & Bockius and Deanne L. Miller, for appellee and cross-appellant.

Freund, Freeze & Arnold, Neil F. Freund and Lindsay M. Johnson, for amici curiae Casper & Casper, Sanford Casper, and Megan Richards.

---

DINKELACKER, Judge.

{¶ 1} When the Industrial Commission of Ohio determines that a worker was not injured during the course and scope of her employment and that decision is not appealed to the court of common pleas, the determination is binding in subsequent litigation in which she must establish the same workplace injury. In this case, because the Industrial Commission determined that the lung problems of plaintiff-appellant/cross-appellee Beverly Mitchell were not the result of her employment, that determination was binding in her related civil action against the manufacturers of the chemicals to which she claimed to have been exposed while working. The trial court properly granted summary judgment for the manufacturers on that basis.

### Lung Ailment Results in Parallel Litigation

{¶ 2} On April 16, 2004, Beverly Mitchell filed a First Report of an Injury, Occupational Disease or Death with the Bureau of Workers' Compensation ("the BWC case"). She claimed that she had been exposed to the chemical diacetyl while working as an assembler at Gold Medal Products.[1] Diacetyl is a chemical found in some butter flavoring commonly used in popcorn, and Gold Medal Products manufactured vending machines that dispensed popcorn. As a result of this exposure, Mitchell claimed that she suffered from "breathing problems" that her doctor had related to her exposure to diacetyl.

{¶ 3} Four months later, Mitchell's claim was disallowed with a finding that "[t]here is no causal relationship between the condition and the alleged source, popcorn flavoring."

{¶ 4} Mitchell appealed that decision to a district hearing officer. After a hearing and the presentation of evidence, the appeal was denied, and Mitchell's claim was again disallowed on April 23, 2005. The district hearing officer found that "Ms. Mitchell did not meet the burden of proof establishing that she contracted an occupational disease during the course of and arising out of her employment with the employer of record. Specifically, it is the finding of the

---

1. Mitchell's employer is referred to throughout the record as either "Gold Medal" or "Gold Metal." We adopt the former for purposes of this opinion as it is the version used in the complaint in this case.

District Hearing Officer that the problems Ms. Mitchell has experienced with her lungs are not the result of her employment."

{¶ 5} Mitchell appealed that decision to a staff hearing officer. After another hearing at which more evidence was presented, that appeal was denied on July 7, 2005. The staff hearing officer affirmed the decision of the district hearing officer with "additional reasoning," finding that "Ms. Mitchell did not contract any occupational disease in the course of and arising out of her employment with Goldmedal [sic] Products Company. The Staff Hearing Officer finds that Mrs. Mitchell did not meet her burden of proof in establishing that the medical problems she is experiencing with her lungs was [sic] a result of her employment activities."

{¶ 6} On September 30, 2005, Mitchell appealed the denial of her claim to the common pleas court. That case remained pending until March 2006, when it was dismissed without prejudice. In the notice of dismissal, Mitchell expressly reserved the right to refile the claim within one year. She did not do so.

{¶ 7} Two months after she had filed the BWC case, Mitchell filed this action against defendants-appellees, International Flavors & Fragrances, Degussa Flavors & Fruit Systems, and Mastertaste, and defendant-appellee/cross-appellant Givaudan Flavors ("the tort case"). She did not name Gold Medal as a defendant. Her initial complaint set forth several causes of action sounding in product liability. She claimed that the manufacturers had provided butter flavoring to Gold Medal and that "during the course of her employment, [she] was exposed to the defendants' diacetyl-containing products." She further claimed that "as a result of the defendants' negligent and defective design of butter flavoring products containing diacetyl, and their failure to adequately warn Ms. Mitchell and Gold Medal of the risks associated with exposure to butter flavoring, Ms. Mitchell has suffered and will continue to suffer severe, permanent damages to her lungs and respiratory system."

{¶ 8} On June 10, 2006, Givaudan sought summary judgment based on the argument that the products it had provided to Gold Medal did not contain diacetyl. After receiving several agreed extensions of time to respond, Mitchell instead filed a motion to amend her complaint on October 18, 2006. The amended complaint was attached to the motion. The bases for the amendment were (1) that discovery in another case had led to the possibility that other chemicals in the butter flavoring might cause lung disease and (2) Mitchell's desire to add claims for fraudulent concealment and conspiracy.

{¶ 9} In the amended complaint, Mitchell alleged that during "the course of her employment, [she] was exposed to the defendants' products, compounds, and/or ingredients containing, inter alia, diacetyl." Mitchell amended the complaint so that throughout, references to products containing "diacetyl" were changed to

"butter flavoring products, compounds, and/or ingredients containing, inter alia, diacetyl." She also sought to reword her alleged injuries, stating that her "exposure to Defendants' natural and artificial butter flavoring products, compounds, and/or ingredients directly and proximately caused her injuries, including inter alia, sustained, severe, permanent, and/or progressive damage to her lungs, severe damage to the respiratory system, and/or impairment of the ability to function." The trial court allowed Mitchell to amend her complaint on March 21, 2007.

{¶ 10} Beginning on April 11, 2007, the manufacturers began filing motions for summary judgment. Their argument was premised on the fact that Mitchell had failed to refile her appeal with the common pleas court in the BWC case. Because one year had passed since Mitchell had voluntarily dismissed the case on March 9, 2006, they contended that the decision of the Industrial Commission was binding on Mitchell in her tort action. Because the Industrial Commission had concluded that her pulmonary illness was not related to occupational chemical exposure, they reasoned, she could not prevail in the tort case as a matter of law. The trial court agreed and granted the manufacturers' motions for summary judgment.

{¶ 11} In one assignment of error, Mitchell now claims that the trial court erred when it granted the motions for summary judgment of International Flavors, Givaudan, Degussa, and Mastertaste. In cross-assignments of error, Givaudan argues that the trial court improperly allowed Mitchell additional time to respond to the summary-judgment motions and that it improperly allowed her to amend her complaint. We conclude that the trial court's entry of summary judgment was proper. Our resolution of Mitchell's assignment of error renders the cross-appeal moot.

### Non–Mutual Collateral Estoppel

 {¶ 12} The doctrine of res judicata states that a final judgment on the merits issued by a court of competent jurisdiction is conclusive as to the rights of the parties and constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action.[2]

 {¶ 13} The doctrine includes two separate components: claim preclusion and issue preclusion. Claim preclusion, or estoppel by judgment, provides that a claim that has been litigated on the merits is conclusively determined as to the parties in that case in any subsequent action.[3] Issue preclusion, or collateral

---

2. *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 712 N.E.2d 713.

3. See *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, quoting *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus.

estoppel, provides that an issue or fact that was fairly, fully, and necessarily litigated and determined in a prior action may not be drawn into question in a subsequent action between the same parties or their privies, regardless of whether the claims in the two actions are identical or different.[4]

{¶ 14} The trial court granted the summary judgment motions in this case based upon its application of collateral estoppel. This court has held that collateral estoppel applies when (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the issue; (3) the issue was admitted or actually tried and decided and was necessary to the final judgment; and (4) the issue was identical to the issue involved in the new action.[5]

### Full and Fair Opportunity to Litigate

{¶ 15} The thrust of Mitchell's argument focuses on the second prong of the collateral-estoppel analysis. She claims that for various reasons, the issue in this case was not fully or fairly litigated in the BWC case. We disagree.

{¶ 16} Mitchell supports her argument on several grounds. She first argues that she was prevented from fully and fairly litigating her claims because the manufacturers had withheld information that had prevented the doctors in the BWC case from establishing a link between her workplace exposure and her lung problems. It was this allegedly withheld evidence that was the basis for the added claims for fraudulent concealment and conspiracy in her amended complaint.

{¶ 17} We note that much of Mitchell's argument in this area is derived from an article titled "Popcorn-worker Lung Caused by Corporate and Regulatory Negligence: An Avoidable Tragedy," which was written by one of Mitchell's expert witnesses and simply attached to her memorandum in opposition to the various summary judgment motions. Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment. Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit.[6] Docu-

---

**4.** *Norwood v. McDonald,* 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus, overruled on other grounds in *Grava v. Parkman Twp.,* 73 Ohio St.3d at 382, 653 N.E.2d 226.

**5.** *Monahan v. Eagle Picher Industries, Inc.* (1984), 21 Ohio App.3d 179, 180, 21 OBR 191, 486 N.E.2d 1165.

**6.** *Huntington Natl. Bank v. Legard,* 9th Dist. No. 03CA008285, 2004-Ohio-323, 2004 WL 128999, at ¶ 10.

ments that have not been sworn, certified, or authenticated by way of affidavit "have no evidentiary value."[7] The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E).[8] Because at least one party in this case objected to the trial court's consideration of the article, and because the record does not indicate that the trial court considered it, the article is not part of our analysis.[9]

{¶ 18} There are two problems with Mitchell's argument. First, the record from the BWC case, which was made part of the record in this case, is replete with information relating to "popcorn-worker lung." There was significant secondary-source material on the topic, including the following: an undated abstract entitled "Inhalation Toxicity of the Flavoring Agent Diacetyl in the Upper Respiratory Tract of Rats," an untitled article about bronchiolitis obliterans and butter-flavor workers in Missouri from 1992 to 2000; an abstract from a 2002 article appearing in the New England Journal of Medicine entitled "Clinical Bronchiolitis Obliterans in Workers at a Microwave Popcorn Plant"; a 2002 factsheet from the National Institute for Occupational Safety and Health entitled "NIOSH Evaluates Worker Exposures at a Popcorn Plant in Missouri"; and a 2004 NIOSH publication entitled "Preventing Lung Disease in Workers Who Use or Make Flavorings."

{¶ 19} In addition, some of Mitchell's treating doctors submitted reports that linked her workplace exposure to her lung problems. In fact, two of her treating doctors had written a 2002 article for the American Journal of Respiratory and Critical Care Medicine entitled "Bronchiolitis Obliterans in the Food Flavoring Manufacturing Industry," an abstract of which appeared in the record of the BWC case. One of the authors, Dr. Robert Baughman, concluded that Mitchell's breathing problems were related to her workplace exposure and submitted two reports in 2004 and 2005 presenting that opinion. In addition, Dr. Allen Parmet issued an opinion in 2005 diagnosing Mitchell with bronchiolitis obliterans, "which is causally connected to her occupational exposure to flavoring while employed at Gold Medal Plant in Cincinnati, Ohio."

{¶ 20} Thus, the record establishes that the tribunals in the BWC case had information about a connection between the workplace exposure and Mitchell's

---

7. See *Lance Acceptance Corp. v. Claudio*, 9th Dist. No. 02CA008201, 2003-Ohio-3503, 2003 WL 21508789, at ¶ 15.

8. *Skidmore & Assoc. Co. v. Southerland* (1993), 89 Ohio App.3d 177, 179, 623 N.E.2d 1259.

9. See id. at 179–80, 623 N.E.2d 1259 (If the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion).

claimed ailments, as well as opinions from her treating physicians that such a connection existed. The tribunals concluded otherwise, relying on the reports of Drs. Prakash Goyal, Peter McCue, and Douglas Linz, each of which concluded that the test results and physiological manifestations were inconsistent with bronchiolitis obliterans but were consistent with usual interstitial pneumonitis—a condition not related to popcorn-worker's lung. Mitchell chose not to challenge that conclusion further by an appeal to the trial court.

{¶ 21} The second problem with Mitchell's argument is that the record establishes that she had obtained much of the "new" information relating to her claim by October 16, 2006. This was the date when she sought to amend her complaint. She attached a copy of the proposed amended complaint to the motion. Thus, the record establishes that Mitchell had had enough information regarding the knowledge and conduct of the manufacturers to draft the proposed pleading. As of that date, Mitchell had almost five full months before the one-year anniversary of her voluntary dismissal of the BWC case to refile the appeal and present this new information.[10]

{¶ 22} Mitchell also contends that Givaudan had refused to let one of her doctors conduct any inhalation studies regarding diacetyl and that this refusal had impeded her ability to establish the required causal connection. In support of this assertion, Mitchell quotes a deposition of the doctor from another case. Leaving aside the question of whether this evidence was properly before the trial court, we note that the quotation in Mitchell's appellate brief is selective. While the doctor did testify that inhalation studies would have been helpful, nowhere in that record did he indicate that he had requested to conduct such tests or that he had been prevented from doing so by Givaudan.

{¶ 23} Mitchell makes the additional argument that some of the doctors in the BWC case were under the mistaken impression that she had been suffering from her lung condition prior to her workplace exposure and that they had reached this conclusion based upon an abnormal X-ray that Mitchell claims did not exist. But the record in this case does not establish that the X-ray did not exist. Even if it did not, there is no reason that this error could not have been addressed during the pendency of the BWC case or, at the very least, raised in a refiled appeal prior to March 9, 2007.

{¶ 24} Finally, as part of her argument that she lacked a full and fair opportunity to litigate her claim, Mitchell claims that applying estoppel in this

---

10. See *Norman v. Longaberger Co.*, 5th Dist. No. CT2003–0013, 2004-Ohio-1743, 2004 WL 728922, appeal denied 103 Ohio St.3d 1406, 2004-Ohio-3980, 812 N.E.2d 1288 (applying res judicata in a BWC case where new information discovered later should have been submitted during the appeal process).

case would result in a manifest injustice. We cannot agree. As one court has noted, "By failing to pursue her appeal, appellant essentially concedes the legitimacy of the BWC's determination. The case became a final judgment on the merits only after appellant failed to refile her appeal one year after her voluntary dismissal. Rather than refiling her workers' compensation appeal within the allotted time, appellant chose to file a separate tort action against appellees. Appellant had every opportunity to protect her interests surrounding the incident. Appellant cannot be permitted to waive the adverse finding of one case when another party or cause of action appears more opportunistic. * * * Justice does not permit a second bite at the apple when a party failed to zealously represent her interests in the prior related case."[11]

{¶ 25} Based upon this record, Mitchell had a full and fair opportunity to litigate her claim in the forum of the BWC case. Any new evidence had been discovered and sufficiently understood by her in time for her to refile her appeal in the BWC case and to relitigate the issue before that decision became final. When she failed to do so, the determination that her pulmonary illness was not related to occupational chemical exposure became binding upon her in this tort case.

### Issue Identical to the Issue in the Prior Suit

{¶ 26} Mitchell also argues that because the parties and issues in the two actions were not identical, collateral estoppel should not have applied. We disagree.

{¶ 27} First, Mitchell argues that the application of collateral estoppel requires that the parties in both actions be identical. It does not. For collateral estoppel to apply, the strict rule of mutuality of parties, usually applicable to res judicata determinations, is relaxed. The party seeking to apply the doctrine need show only that the party "against whom the doctrine is asserted previously had his day in court and was permitted to fully litigate the specific issue sought to be raised in the later action."[12]

{¶ 28} Mitchell also argues that the issues in the two cases were different. She notes that the BWC case involved "breathing problems" caused by "diacetyl," while her tort case alleged "sustained, severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system" caused by "butter flavoring products, compounds, and/or ingredients containing, inter alia, diacetyl."

---

11. *Young v. Gorski*, 6th Dist. No. L–03–1243, 2004-Ohio-1325, 2004 WL 540944, ¶ 12, 14.

12. See *Hoover v. Transcontinental Ins. Co.*, 2nd Dist. No. 2003–CA–46, 2004-Ohio-72, 2004 WL 41489, ¶ 8–17 (discussion of the history of the mutuality requirement in Ohio).

She also points out that she had added claims for fraudulent concealment and conspiracy that had not been addressed in the BWC case.

{¶ 29} But the factual determination made in the BWC case was that Mitchell's pulmonary condition was not related to workplace exposure. The district hearing officer made the factual finding that "the problems Ms. Mitchell has experienced with her lungs are not the result of her employment activities." The staff hearing officer agreed, making the finding that she had failed to prove that "the medical problems she was experiencing with her lungs [were] a result of her employment activities." When Mitchell chose not to contest this factual determination further, she became bound by it.

{¶ 30} On the other hand, Mitchell was obviously unable in the BWC case to pursue claims of fraudulent concealment and conspiracy against the manufacturers. Nonetheless, collateral estoppel involves issue preclusion, not claim preclusion. To prevail on these claims, Mitchell had to establish that she was injured by her exposure to the butter flavorings while working for Gold Medal. She failed to do so in the BWC case and failed to prevent that decision from becoming final. If a party could defeat the application of collateral estoppel by asserting claims that could not have been brought in the previous action, it would undermine the doctrine of issue preclusion altogether. Well-recognized applications, such as the collateral-estoppel effect of a criminal conviction in a subsequent civil action,[13] would disappear.

### Limitation on Discovery

{¶ 31} Mitchell also argues that the trial court improperly denied her request to conduct additional discovery prior to the entry of summary judgment. As this argument relates to a decision by the trial court separate from the one to grant summary judgment, it should have been raised as a separate assignment of error.[14] Nonetheless, we find no abuse of discretion. This case had been pending for over three years by the time the first motion for summary judgment was filed. It was not unreasonable, arbitrary, or capricious for the trial court to conclude that no additional time was needed to discover information that "may raise new material issues or relevant information that was not available in the workers' compensation action." In fact, Mitchell was able to file a memorandum

---

13. See, e.g., *State Farm Fire & Cas. Co. v. Harpster,* 8th Dist. No. 90012, 2008-Ohio-3357, 2008 WL 2612617 ("A criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action").

14. See *State v. Taravella,* 7th Dist. No. 02 HA 542, 2003-Ohio-4880, 2003 WL 22120272, at ¶ 33 (arguing that the trial court's improperly having failed to conduct a competency hearing "has nothing to do with counsel's ineffectiveness and Taravella has not assigned this alleged error as a separate assignment of error. Accordingly we will disregard this argument").

in opposition to the motions for summary judgment and did so concurrently with the motion for additional time to conduct discovery.

### Cross–Appeal Moot

{¶ 32} In two assignments of error, Givaudan argues that the trial court improperly allowed Mitchell additional time to respond to the summary judgment motions and that it improperly allowed her to amend her complaint. In light of our resolution of Mitchell's assignment of error, Givaudan's cross-appeal is moot.

### Conclusion

{¶ 33} Faced with a similar case, the Sixth Appellate District concluded that collateral estoppel applied.[15] In that case, the court held that "appellant was appropriately estopped from pursuing her present cause of action. * * * Appellant received a full and fair opportunity to present her case in the workers' compensation process. A voluntary dismissal illustrates a waiver of a party's right to proceed with that specific cause of action. Further, appellant's argument addressing the tactical decisions of prior counsel is not compelling, considering the fact that the present tort action was filed within the one-year window permitting an appeal to be refiled. It cannot be said that based on the facts set forth in the record, appellant was denied either a full and fair opportunity to litigate or that justice would require relitigation."[16]

{¶ 34} In this case, Mitchell had a full and fair opportunity in the BWC case to litigate the issue whether her respiratory problems had been caused by exposure to chemicals in the workplace. She chose not to pursue an appeal to the common pleas court and allowed the adverse judgment to stand. Like the Sixth Appellate District, we cannot conclude either that she was denied a full and fair opportunity to litigate or that justice would require relitigation. Mitchell's sole assignment of error is overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

HILDEBRANDT, P.J., and PAINTER, J., concur.

---

15. *Young*, 2004-Ohio-1325, 2004 WL 540944.

16. Id. at ¶ 14.