[Cite as *Quetot v. M&M Homes, Inc.*, 2013-Ohio-752.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ERIC QUETOT, et al. | ) | CASE NO. 12 CO 1 |
| PLAINTIFFS-APPELLANTS | ) | |
| VS. | ) | |
| M&M HOMES INC | ) | |
| DEFENDANT-THIRD PARTY PLAINTIFF-APPELLEE | ) | OPINION |
| VS. | ) | |
| ALLEN RUMMEL, et al. | ) | |
| THIRD-PARTY DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 10 CV 979

JUDGMENT:     Affirmed.

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  February 25, 2013

[Cite as *Quetot v. M&M Homes, Inc.*, 2013-Ohio-752.]
APPEARANCES:

| | |
|---|---|
| For Plaintiffs-Appellants Eric & Tina Quetot: | Atty. Geoffrey D. Korff<br>The Korff Law Firm LLC<br>310 E. Euclid Ave.<br>Salem, Ohio 44460 |
| For Defendant-Appellee M&M Homes: | Atty. Michael P. Marando<br>Pfau, Pfau & Marando<br>P.O. Box 9070<br>Youngstown, Ohio 44513 |
| For Third Party Defendant Allen Rummel: | Atty. Wm. Scott Fowler<br>Comstock, Springer & Wilson Co., LPA<br>100 Federal Plaza East, Suite 926<br>Youngstown, Ohio 44503 |
| For Third Party Defendant Boak & Son, Inc.: | Atty. Craig G. Pelini<br>Pelini, Campbell, Williams & Traub, LLC<br>8040 Cleveland Ave., NW, Suite 400<br>N. Canton, Ohio 44720 |
| For Third Party Defendant James R. Close,<br>dba Siding Guys: | Atty. James E. Featherstone<br>610 South Front Street<br>Columbus, Ohio 43215 |
| For Third Party Defendant L&L Masonry: | Atty. Brian J. Macala<br>117 South Lincoln Avenue<br>Salem, Ohio 44460 |
| For Third Party Defendant David Rose,<br>dba Rose Excavating: | Atty. Maria Placanica<br>50 South Main Street, Suite 502<br>Akron, Ohio 44308 |
| Third Party Defendant: | Ted Bell, dba Bell Plumbing<br>580 Continental Drive<br>Salem, Ohio 44460 |

WAITE, J.

**{¶1}** Appellants Eric and Tina Quetot ("Appellants") are appealing a partial summary judgment decision of the Columbiana County Court of Common Pleas. Appellants filed a multi-count complaint arising from disputes over a house that was built for them by Appellee M&M Homes Construction, Inc. ("M&M Homes"). One of the counts involved an alleged violation of the Consumer Sales Protection Act ("CSPA"). The court granted summary judgment to Appellee on the CSPA claim, but other claims remain pending. The trial court determined that Appellants' CSPA claim was barred by the two-year statute of limitations in R.C. 1345.10(C), because Appellants' home was built in 2007, but their complaint was not filed until 2010.

**{¶2}** Appellants argue on appeal that their CSPA claim was not time barred. The parties all agree that a CSPA claim may be brought for a deceptive act that occurs before, during or after a consumer transaction. R.C. 1345.02(A). The consumer transaction in this case was the building of a house. Even though Appellants' home was constructed in 2007, Appellants claim that a relevant, deceptive act occurred in 2009 when Nathan Maley of M&M Homes made representations that it would continue to repair any construction problems that arose and then failed to correct these problems. Appellants contend that they filed their complaint within two years of the 2009 deceptive promise. Appellants are mistaken in their contention. The record does not contain any evidence as to a deceptive promise or assurance made by M&M Homes in 2009. Further, we have held that when it is the initial construction (rather than any subsequent repairs) that constitutes the alleged violation, it is the initial construction that triggers the two-year statute of

limitations. *Rosenow v. Shutrump & Assoc.*, 163 Ohio App.3d 500, 2005-Ohio-5313, 839 N.E.2d 82 (7th Dist.). Appellants' argument is neither legally persuasive nor supported by the record.

{¶3} In Appellants' second assignment of error they request that we reverse the trial court's ruling regarding whether punitive damages and attorney fees may be sought on a pending tort claim. The trial court did not deny the possibility of punitive damages and attorney fees for the tort claim and no relief is necessary on appeal. Both of Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

## History of the Case

{¶4} This case arose out of the construction of a single family residence by M&M Homes in late 2006 and early 2007 for Appellants in New Waterford, Ohio. The contract was entered into on September 1, 2006. M&M Homes was the general contractor, and it utilized a variety of subcontractors in construction. Mr. Nathan Maley is the founder of M&M Homes and is one of the two shareholders of the corporation.

{¶5} Appellants moved into the house in February, 2007. Appellants found problems with the structure soon after they moved in. These problems included issues with the drywall, the roof, plumbing, water leaks, and excess moisture. Appellants contacted M&M homes about these problems in 2007 and M&M Homes attempted to correct the problems.

**{¶6}** Appellants filed a multi-count lawsuit against M&M Homes on October 27, 2010. The complaint alleged negligence (Count I), breach of implied warranty of habitability (Count II), breach of implied warranty (Count III), violation of the CSPA (Count IV), breach of contract (Count V), and unjust enrichment (Count VI). Appellants asked for punitive damages and attorney fees. M&M Homes filed an answer and a third-party complaint impleading various subcontractors. After discovery was completed, M&M Homes filed a motion for summary judgment on counts I (negligence), II (beach of implied warranty), IV (CSPA violation), and VI (unjust enrichment). M&M Homes also sought summary judgment with respect to claims for punitive damages and bifurcation of the punitive damages issue. Appellants subsequently dismissed Count II and Count VI of the complaint, leaving the court to resolve Count I (negligence) and Count IV (CSPA violation) in summary judgment. Appellants later added a claim of negligent misrepresentation to their complaint.

**{¶7}** On January 3, 2012, the trial court ruled that Appellants' CSPA claim was time barred. It denied M&M Homes' motion for summary judgment on the negligence claim. It also ruled that the claim for punitive damages under the CSPA was time barred, and that the motion to bifurcate the claims for punitive damages was moot. Thus, the court granted partial summary judgment to M&M Homes only on the CSPA claim and on the claim for punitive damages under the CSPA. Appellants filed an appeal on January 11, 2012. We notified the parties that the January 3, 2012, judgment entry was not a final appealable order and did not contain

the language required by Civ.R. 54(B) to allow the partial summary judgment to be treated as a final appealable order. The court amended its judgment entry on February 15, 2012, to include the appropriate language and this appeal may now proceed.

ASSIGNMENT OF ERROR NO.1

APPELLANTS' CSPA CLAIM IS BASED ON ACTIONS AND REPRESENTATIONS OF THE DEFENDANT THAT OCCURRED WELL AFTER CONSTRUCTION OF THEIR HOME WAS COMPLETED, AND WITHIN THE 2-YEAR STATUTE OF LIMITATIONS REQUIRED FOR A CSPA CLAIM.

**{¶8}** Appellants present two arguments in support of the idea that the CSPA claim was not time barred by the two-year limitations period found in R.C. 1345.10(C). The parties agree on almost everything necessary to resolve this matter. Their only material disagreement revolves around what Mr. Maley (the representative of M&M Homes) said or meant in his deposition.

**{¶9}** The parties agree on the relevant law. First, they agree that the appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable

minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

{¶10} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

{¶11} The parties also agree on the basic law applicable to the statute of limitations for a CSPA claim. The parties assume for the sake of argument that the services provided by M&M Homes were covered by the CSPA, found in R.C. 1345.01 et seq. Pursuant to R.C. 1345.10(C), "[a]n action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of

the violation which is the subject of suit[.]" Thus, the statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction. *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP-559, 2003-Ohio-2305, ¶27. Rather, the Ohio general assembly explicitly recognized that a CSPA violation may occur before, during or after the underlying consumer transaction. R.C. 1345.02(A) and 1345.03(A).

{¶12} No discovery rule applies to claims for monetary damages under the CSPA. *Weaver v. Armando's, Inc.*, 7th Dist. No. 02 CA 153, 2003-Ohio-4737, ¶37; *Lloyd v. Buick Youngstown, GMC*, 115 Ohio App.3d 803, 807, 686 N.E.2d 350 (7th Dist.1996). R.C. 1345.09(C)(1) limits the discovery rule to claims for rescission or revocation of the consumer transaction: "(C)(1) Except as otherwise provided in division (C)(2) of this section, in any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." In other words, when there is a claim for money damages under the CSPA, the statute of limitations begins to run when the violation occurs, not when the consumer discovers the violation. "R.C. 1345.10(C) sets forth an absolute two-year statute of limitations for such damage actions." *Luft* at ¶25, citing *Cypher v. Bill Swad Leasing Co.*, 36 Ohio App.3d 200, 202, 521 N.E.2d 1142 (10th Dist.1987). There is no dispute that Appellants are

claiming monetary damages in this case. Therefore, the discovery rule does not apply to their CSPA claim.

{¶13} The dispute in this appeal, which was the same dispute at the trial court level, is about the date of the alleged "occurrence" that triggered the two-year statute of limitations. There is no question that a "transaction" took place starting on September 1, 2006, when the parties entered into the contract to build a home. This transaction continued until the house was built and Appellants occupied it in early 2007.

{¶14} It is at this point that the parties' arguments diverge. Appellants first argue that the statute of limitations was tolled starting on June 18, 2010, when they sent a letter to M&M Homes about defects in the construction. Appellants sent another letter on September 22, 2010, notifying M&M Homes of the impending lawsuit. Under R.C. 1312.04, an owner may not commence arbitration or litigation against a builder of a residential building until 60 days after providing the builder with notice of the alleged construction defects. R.C. 1312.08 provides that once notice of the defects is sent, all applicable statutes of limitation are tolled until the owner complies with R.C. Chapter 1312. After receiving notice, the builder must provide a response. If the builder fails to respond or disputes the claim, an owner is deemed to have complied with the statute and may commence suit. Appellants contend that they complied with R.C. 1312.04 and 1312.08, and that the statute of limitations did not expire.

**{¶15}** Appellants' argument is without merit. Since the house was constructed and occupied in early 2007, the two-year statute of limitations would have already run by June 18, 2010, and the tolling provision would have been moot by then. Further, the letters of June 10th and September 22nd, 2010, were not properly before the trial court, nor are they properly before us on appeal. They were attached to Appellants' memorandum in opposition to summary judgment, but they were not referenced in an affidavit. Civ.R. 56(C) provides an exclusive list of materials a trial court may consider when deciding a motion for summary judgment: affidavits, depositions, answers to interrogatories, written admissions, transcripts of evidence in the pending case, and written stipulations. *Aegis v. Sedlacko*, 7th Dist. No. 07MA128, 2008-Ohio-3190, ¶22. No other evidence may be considered unless it is introduced as "evidentiary material only through incorporation by reference in a properly framed affidavit." *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶17 (10th Dist.); *see, also*, Civ.R. 56(C). A party cannot simply attach documents to its memorandum in opposition to summary judgment and expect the court to treat those documents as evidence.

**{¶16}** Whether Appellants tolled or did not toll the statute of limitations on June 18, 2010, does not determine the outcome of this assignment of error. The only significant question under this assignment of error is whether there was an "occurrence of a violation" within two years of October 27, 2010, which is the date the complaint was filed.

**{¶17}** Appellants' basis for relief on appeal is premised on some type of alleged promise or assurance made by Nathan Maley in 2009 that they posit can be found on pages 39-40 of his deposition. Appellants cite cases that supposedly stand for the proposition that the two-year statute of limitations begins to run anew if the contractor continues to make assurances that it will remedy a problem arising from a much earlier consumer transaction, and then fails to follow through on the promise. *See Keiber v. Spicer Construction Co.*, 2d Dist. Nos. 98CA23, 98CA30 (May 28, 1999); *Roelle v. Orkin Exterminating Company, Inc.*, 10th Dist. No. 00AP-14, 2000 WL 1664865 (Nov. 7, 2000); *Hofstetter v. Fletcher*, 905 F.2d 897 (6th Cir.1988). The point Appellants draw from these cases is that a promise made by a contractor long after the initial transaction may still be considered an "occurrence of a violation" if it arises from the initial transaction and is deceptive, *i.e.*, is not carried out. Appellants contend that Mr. Maley made such a promise sometime in 2009.

**{¶18}** Appellants' argument fails for two important reasons. First, we have made it clear that if the allegation is that monetary damages stem from the initial construction or installation, then the two-year statute of limitations in R.C. 1345.10(C) is absolute and runs from the time of initial construction or installation. In *Rosenow*, we reasoned as follows:

Appellant also argues that appellees violated the OCSPA by deceiving him when they made assurances that the roof was repaired. However, this contention lacks evidentiary support. The evidence does not demonstrate that appellees gave assurances to appellant that they

repaired all problems with the roof. In fact, appellant's affidavit states that Shutrump attempted to fix the roof, but was unsuccessful. Because the evidence demonstrates that the roof was likely improperly installed, any violation of the OCSPA occurred in 1998 when the roof was installed. Again, appellant is time barred by the statute of limitations. Appellant's argument that the repairs performed in 2001 also constitute a violation is unsupported by the evidence because the improper installation, not the subsequent repairs, led to the problems with the roof.

*Id.* at ¶18.

**{¶19}** Appellants try to circumvent our decision in *Rosenow* by characterizing Mr. Maley's promise as a promise to do new work on their home. Unfortunately for Appellants, there is no evidence of a promise of any kind made by Mr. Maley in the section of the deposition they cite. Appellants refer to pages 39-40 of the deposition three times without specifically highlighting the alleged statements made by Mr. Maley that they claim entitle them to relief. Those two pages are reproduced in their entirety below. Note that Mr. Korff is Appellants' attorney, and Mr. Marando is M&M Homes' attorney.

MR. KORFF: Strike that.

Q Was there a point where Mr. Quetot, you instructed Mr. Quetot just to call the subcontractor directly to fix any problems?

A   No.  I would have given him his phone number if they would have asked.   But I didn't instruct them to call them.   They're more than welcome to call me any time.   Never do I turn somebody down from calling me, never.

Q  After 2008, do you remember there being any additional issues with the house that were raised to you?

A  Up till present, 2008 up till now you're saying?

Q  Yes.

A   In '09, January of '09, January or February of '09 my partner, who did not work with the Quetots, did not really even know the Quetots, calls me and says, Eric Quetot called asking for the roofer's phone number.  I believe he gave him the roofer's phone number at that time. I wasn't even asked to call, but I did.  He called me and told me, he said, I just wanted you to know that.

So I called Mr. Quetot and asked him what the problem was.  At this time there was about 20 or 20, that was when we had one of those 20- to 24-inch snows.  He told me where he was getting a little water in in the, in the laundry room.

And at that point I told him that snow will have to come off of there before a roofer can repair, can look at that. And this was, this was, what, three years he was into the house now, probably three years.

Then I received -- I didn't hear anything back for probably, it was probably a month and a half, two months. Then I received a letter in the mail demanding that I pay 2900 or $3,000 from the Quetots' insurance company. There was not contact at all to let me know what was going on.

So I just gave it to my insurance company, and asked them, what should I do? I really wanted to just call up and see if I could fix the problem. But it wasn't in that form. It was demanding that I pay this amount of money.

Insurance company says, we'll handle it. And then I received a letter from his, or from his attorney. And that's up, up till now where we're at.

MR. MARANDO: Off the record a second, Geoff.

(Whereupon, a discussion was held off the record.)

Q Okay. You mentioned that there was a --

MR. KORFF: Well, strike that.

Q You said that your partner gave Mr. Quetot the [end of page 40].

(8/24/11 Maley Depo., pp. 39-40.)

**{¶20}** There is nothing in this section of Mr. Maley's deposition that constitutes a promise to complete work or a promise to correct a problem with the house. Maley did not even promise to have someone look at the roof because there was too much snow for a roofer to examine the alleged problem. Maley says he waited for a response from Appellants after speaking with Mr. Quetot, but no response came. Maley later received a demand letter from Appellants' insurance company. He called his own insurance company to report the matter, and the insurance company told him it would deal with the problem. Then a letter was supposedly sent from Appellants' attorney to M&M Homes on June 18, 2010, demanding the cost of repairs. On review, we are mystified by Appellants' assertion that we can find a basis for a consumer protection claim arising in 2009, based on the aforementioned deposition pages. In fact, a review of the total record on appeal is void of any evidence of any such alleged promise.

**{¶21}** Because Appellants are claiming relief for damages arising from the initial construction of their home, and because such relief under the CSPA is barred by the statute of limitations in R.C. 1345.10(C), the trial court was correct in granting summary judgment to M&M Homes on the CSPA claim. Appellants' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES MAY BE BROUGHT ON ANY TORT CLAIM, NOT ONLY CSPA VIOLATIONS.

**{¶22}** In Appellants' second assignment of error they request that we reverse the trial court's decision denying punitive damages and attorney fees for a pending tort claim. The trial court did not deny these fees for the tort claim. The judgment entry stated: "this Court also finds as a matter of law that the Plaintiffs' claims for punitive damages and attorney fees based on the CSPA are also time barred." (2/15/12 J.E., p. 9.) Nothing is mentioned about any other claims for punitive damages or attorney fees. Therefore, the request for those fees remains pending. Since the alleged error did not occur, no relief is necessary on appeal. Appellants' second assignment of error is overruled.

### Conclusion

**{¶23}** Appellants argue that their CSPA claim is not time barred under the two-year statute of limitations in R.C. 1345.10(C). Appellants have not demonstrated that M&M Homes took any action within two years of the filing of their complaint that constitutes an "occurrence of a violation." Without such an occurrence, the claim is time barred. Appellants' reliance on pages 39-40 of the deposition of Nathan Maley is unwarranted because there is nothing in the deposition that can constitute any type of promise or assurance actionable under the CSPA. Appellants also request that punitive damages and attorney fees be allowed for their tort claim, but this was never

denied by the trial court and no relief on appeal is needed. Both of Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.