[Cite as *Siegel v. Ringer*, 2017-Ohio-6969.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DANIEL SIEGEL, | : | APPEAL NO. C-160659 |
| and | : | TRIAL NO. A-0907503 |
| FRANCES B. SIEGEL, Individually and as Administratix of the Estate of Jessica Ann Siegel, | : | *O P I N I O N.* |
| | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ANDREW JOEL RINGER, M.D., | : | |
| MAYFIELD CLINIC AND SPINE INSTITUTE, | : | |
| | : | |
| TRIHEALTH, INC., | : | |
| TRIHEALTH INC., TRIHEALTH LABORATORIES, | : | |
| GOOD SAMARITAN HOSPITAL, | : | |
| AMIE SMITH, R.N., | : | |
| and | : | |
| DANIEL R. BECKMAN, M.D., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 26, 2017

*John H. Metz*, for Plaintiffs-Appellants,

*Trionna & Vollman, LTD., James P. Triona* and *Paul J. Vollman*, for Defendants-Appellees Joel Ringer M.D. and Mayfield Clinic & Spine Institute,

*Rendigs, Fry, Kiely & Dennis, Thomas M. Evans* and *Felix J. Gora*, for Defendants-Appellees TriHealth, Inc., TriHealth Laboratories, Good Samartin Hospital, Amie Smith R.N., and Daniel Beckman, M.D.

**ZAYAS, Presiding Judge.**

{¶1} The death of one's child is an unimaginable loss. In reviewing this appeal, we discharge our duty without passion or prejudice, recognizing that this case originates from the death of Jessica Siegel at the age of 16, and that she is survived by both of her parents.

{¶2} Plaintiffs-appellants Daniel and Frances B. Siegel ("Siegels") appeal from the trial court's grant of summary judgment in favor of defendants-appellees Andrew Ringer, M.D., ("Ringer"), Mayfield Clinic and Spine Institute ("Mayfield"), and TriHealth, Inc., TriHealth Laboratories, Good Samaritan Hospital, Amie Smith, R.N., and Daniel R. Beckman, M.D., (collectively referred to as "Good Samaritan") in a medical-malpractice case involving the death of Jessica Siegel. We affirm the judgment of the trial court, because the medical-malpractice claims and wrongful-death claim were time barred by the statute of limitations, an autopsy-consent form does not create a contract, and collateral estoppel prohibited the Siegels from relitigating whether Ringer engaged in fraud and spoliation.

## The Basis of the Law Suit

{¶3} When she was nine years old, Jessica Siegel was diagnosed with an arteriovenous malfunction ("AVM"), a congenital condition which is an abnormal tangle of blood vessels in the brain. She had undergone several embolizations to treat the AVM following her diagnosis. On July 28, 2006, Ringer performed an embolization, and Jessica was released that day. Ringer performed a second embolization on August 14, 2006. During this procedure, Jessica suffered a small perforation to a blood vessel, a known potential complication. In recovery, Jessica complained of severe headaches and was placed in a medically-induced coma to manage the intracranial pressure. When the pressure became difficult to treat, Ringer performed a craniotomy, a procedure to remove a portion of the skull to

relieve the pressure. On August 23, 2006, a tracheostomy was performed to assist her breathing. Jessica developed a fever of 108 degrees which led to a lack of heart function and cardiopulmonary arrest. She died that evening.

{¶4} Following her death, Ringer suggested that Jessica's father, Daniel Siegel, consent to an autopsy because he suspected a clot had broken loose or Jessica suffered from malignant hyperthermia, a rare, hereditary condition that can be triggered by anesthesia exposure. Daniel consented, and Amie Smith, R.N., who was not present during the conversation, gave Daniel an autopsy-consent form. After signing the form, Daniel left the hospital.

{¶5} Smith filled out the signed autopsy form. She initially checked the box for a brain autopsy, and Ringer explained the autopsy was to determine whether a genetic marker existed for the malignant hyperthermia and whether a pulmonary embolism had occurred. Ringer did not need to have the head or brain autopsied because he had multiple imaging studies that showed the condition of her brain, so Smith corrected the form.

{¶6} Dr. Beckman, a staff pathologist at Good Samaritan Hospital, conducted the autopsy. Before performing the autopsy, he called Ringer to discuss Ringer's concern and the limited nature of the autopsy. Beckman performed the autopsy and received the results from the genetic testing on November 12, 2006. The completed autopsy report was available on December 8, 2006, and a copy was given to the Siegels shortly thereafter.

{¶7} In April 2007, the Siegels hired an attorney who requested Jessica's medical records for purposes of legal review. In January 2008, Daniel met with Ringer to discuss the autopsy results.

{¶8} In January 2009, the Siegels filed a medical-negligence, wrongful-death,

4

and fraud suit against Ringer and Mayfield. The complaint alleged that defendants interfered with the contract for the autopsy, intentionally altered a medical record to avoid liability, and committed fraud and spoliation by ordering a medical record to be altered. In December 2009, the Siegels filed a complaint against Good Samaritan for medical negligence and fraud, also alleging that defendants failed to obtain a full and informed consent for the autopsy and made false representations regarding the autopsy.

{¶9} In both cases, the Siegels claimed that the actions were timely because the event that started the running of the statute of limitations occurred on December 17, 2008. On that date, the Siegels had deposed Smith and discovered that Ringer had ordered a limited autopsy instead of a complete autopsy.

{¶10} After the cases were consolidated in 2011, Ringer argued that he was entitled to immunity under R.C. 2743.02(F) and 9.86 because he was an employee of the University of Cincinnati. The matter was stayed until the immunity issue was resolved in the Court of Claims.

## The Court of Claims Proceeding

{¶11} In the Court of Claims, the Siegels alleged that Ringer was not entitled to immunity because their claims arose from Ringer's deceptive and fraudulent conduct. Specifically, they alleged that Ringer fraudulently changed the autopsy form to order a limited autopsy instead of a complete autopsy, failed to notify the coroner to ensure the autopsy was performed by Good Samaritan, deliberately destroyed evidence of malpractice, and engaged in spoliation. The Siegels further alleged that Ringer's conduct was done with malicious purpose, in bad faith, and in a wanton or reckless manner.

{¶12} After discovery, the court conducted an evidentiary hearing to determine if Ringer's conduct in ordering the limited autopsy constituted fraud, and whether he acted with malicious purpose, bad faith, or in a wanton or reckless manner. The court

found that Ringer was entitled to immunity based on the following factual findings:

- Dr. Ringer approached Daniel and requested an autopsy to determine the cause of Jessica's death.

- Daniel signed an autopsy authorization form that was blank except for Jessica's name. As the nurse was completing the form, she checked the box for a full autopsy. Ringer corrected her, and she crossed out full autopsy and checked the correct box.

- Ringer's correction of the autopsy-consent form did not demonstrate malice because Ringer was assisting Smith to complete the form in accordance with his orders.

- The coroner's office was contacted, and the coroner declined to perform the autopsy as stated in the hospital discharge summary.

- When Daniel signed the consent form, he assumed a full autopsy would be done.

- If Ringer were trying to mislead or deceive the Siegels, he would not have requested an autopsy at all. Ringer requested the autopsy because he genuinely wanted to determine the cause of Jessica's death.

- Ringer did not autopsy the brain because he had numerous imaging studies that showed the condition of her brain at the time, including multiple CT scans and angiograms.

- Plaintiffs failed to prove Ringer acted with malicious purpose, bad faith, or in a reckless manner with regard to his treatment and care of Jessica.

{¶13} The Siegels appealed to the Tenth District Court of Appeals, which

affirmed the Court of Claims judgment. *See Siegel v. Univ. of Cincinnati College of Medicine*, 2015-Ohio-441, 28 N.E.3d 612 (10th Dist.). In reaching its decision, the Tenth District Court of Appeals explained that the facts relevant to the immunity issues were "appellant's allegations of fraud and spoliation of evidence * * *." *Id.* at ¶ 26. The court reiterated that "[a]ppellants chiefly argue that Dr. Ringer's decision not to order a complete autopsy bespoke fraud, spoliation, and other conduct sufficient to avoid immunity." *Id.* at ¶ 40. Ultimately, the court concluded that the evidence supported a finding that Ringer "did not act with malicious purpose, in bad faith, or in a wanton or reckless manner during his treatment and care of Jessica." *Id.* at ¶ 48. The Siegels timely appealed to the Ohio Supreme Court, and the court declined jurisdiction. On March 9, 2016, the Ohio Supreme Court denied the Siegels' motion for reconsideration.

### The Motions for Summary Judgment

{¶14} The case resumed in Hamilton County against Mayfield and Good Samaritan. Mayfield filed a motion for summary judgment alleging that the claims were time barred, the Siegels were estopped from arguing that Ringer committed fraud and spoliation, and the fraud and spoliation claims were medical claims subject to the one-year statute of limitations. Good Samaritan filed a motion and supplemental motion for summary judgment alleging that the claims were time barred, Smith and Beckman did not commit any fraudulent conduct, the Siegels were estopped from arguing that Ringer committed fraud and spoliation, and the autopsy-consent form did not create a contractual obligation.

{¶15} With respect to the statute of limitations, Mayfield alleged that the cognizable event that started the time running was the complication, and the statute of limitations expired on August 23, 2007, one year after Jessica's death and the termination of her minority status. Good Samaritan argued the claims accrued when the Siegels received the autopsy report in December 2006, or, in the alternative, when the Siegels read the autopsy report in December 2007.

{¶16} The trial court granted the motions for summary judgment, finding that the actions were time barred under the statutes of limitations and the authorization form to complete an autopsy did not create a contractual obligation. Finally, the court found that collateral estoppel barred the plaintiffs from alleging fraud and spoliation since the Court of Claims and Tenth District Court of Appeals had found that Ringer had not committed fraud and had not acted with malicious purpose, in bad faith, or in a wanton or reckless manner. This appeal followed.

## Statute of Limitations

{¶17} In their first assignment of error, the Siegels claim that the trial court erred in granting summary judgment because there was a factual dispute as to when the statute of limitations began to run. Specifically, the Siegels claim the cognizable even occurred on December 18, 2008, the date that they alleged they discovered that Ringer fraudulently ordered a limited autopsy instead of a complete autopsy.

{¶18} An appellate court reviews the granting of a summary judgment de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175, 722 N.E.2d 108 (8th Dist.1999). Summary judgment is appropriate when, looking at the evidence as a whole (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 686-687, 653 N.E.2d 1196 (1995). If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶19} The Siegels were required to file the wrongful-death action within two years of Jessica's death. R.C. 2125.02(D). With respect to the medical-malpractice claims, the Siegels were required to file the claims within one year after the cause of action accrued. R.C. 2305.113(A).

{¶20} Under the discovery rule, a cause of action for medical malpractice accrues "when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver v. Kaiser Community Health Found.,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983), syllabus. To establish when a person should have discovered the injury, the court must review the facts to determine (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and (3) whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 5-6, 516 N.E.2d 204 (1987).

{¶21} The accrual of the cause of action depends upon the existence of a "cognizable event." "A 'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which she complains is related to a medical diagnosis, treatment or procedure that she previously received." *Flowers v. Walker,* 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992), citing *Allenius v. Thomas,* 42 Ohio St.3d 131, 538 N.E.2d 93 (1989), syllabus. "Constructive knowledge of facts, rather than actual knowledge of their legal significance" is sufficient under the discovery rule. *Flowers* at 549. The "cognizable event * * * puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." *Id.*

{¶22} The Siegels contend that the cognizable event did not occur until they deposed Smith and learned that Ringer ordered a limited autopsy instead of a complete autopsy. On the record before us, we conclude the trial court did not err when it found that the cognizable event could have occurred at the time of the complication on August 14, 2006, or the death on August 23, 2006, when the Siegels

requested the autopsy, or when they received the report in December 2006. A reasonable person should have been aware that the complication and death were related to medical services rendered to Jessica, especially when Ringer requested an autopsy immediately after her death. Moreover, the Siegels began a "further inquiry" when they requested a copy of the autopsy and hired an attorney to review Jessica's medical records.

{¶23} It is not necessary for purposes of this appeal to pinpoint exactly when the cognizable event occurred. The Siegels filed their negligence claims in January 2009 against Mayfield and in December 2009 against Good Samaritan. If a cognizable event occurred before January 2008 and December 2008, respectively, the complaints were filed after the expiration of the statute of limitations. There is no question that a cognizable event occurred by December 2006 when the Siegels obtained the autopsy report. Accordingly, we find that by December 2006, a cognizable event occurred that was sufficient to put the Siegels on notice of the need for further inquiry.

{¶24} The Siegels' negligence claims filed in January 2009 against Mayfield and in December 2009 against Good Samaritan are barred by the one-year statute of limitations pursuant to R.C. 2305.11(A). The wrongful-death action against Mayfield was also time barred because it was filed more than two years after Jessica's death. *See* R.C. 2125.02(D).

{¶25} The trial court properly determined that the complaints were filed after the expiration of the statute of limitations. The Siegels' first assignment of error is overruled.

### Contract Claim

{¶26} In their second assignment of error, the Siegels claim that the trial court erred in concluding that the authorization to perform an autopsy did not create a contractual obligation for Good Samaritan. This claim is without merit. The

10

existence of an enforceable contract is a prerequisite to a contract claim. An authorization to complete an autopsy did not create a contractual obligation for Good Samaritan to conduct the autopsy. *See Federman v. Christ Hosp.*, 1st Dist. Hamilton No. C-120484, 2013-Ohio-5507, ¶ 14. Consequently, we overrule the Siegels' second assignment of error.

### Collateral Estoppel

{¶27} In their third and fourth assignments of error, the Siegels argue that the trial court erred in applying collateral estoppel to bar them from relitigating whether Ringer's limitation of the autopsy constituted fraud and spoliation, because Mayfield was not a party in the Court of Claims and the issues of fraud and spoliation were not litigated.

{¶28} Collateral estoppel, also known as issue preclusion, provides that facts or issues that were fully, fairly, and necessarily determined in a prior judicial setting may not be relitigated in a later action, regardless of whether the claims in the two actions are identical or different. *See Ft. Frye Teachers Assn. OEA/NEA v. State Emp. Relations Bd.*, 102 Ohio St.3d 283, 2004-Ohio-2947, 809 N.E.2d 1130, ¶ 10, citing *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989). Collateral estoppel applies when (1) the party against whom estoppel is sought was a party to the prior action; (2) there was a final judgment on the merits in the prior action after a full and fair opportunity to litigate the issue; (3) the issue was decided and was necessary to the final judgment; and (4) the issue was identical to the issue involved in the new action. *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶ 14 (1st Dist.).

{¶29} The Siegels first argue that collateral estoppel does not apply because Mayfield and Good Samaritan were not parties to the Court of Claims action. That argument is contrary to the application of collateral estoppel, because Mayfield and Good Samaritan are seeking to assert the doctrine against the Siegels. Therefore, the

question is whether the Siegels were a party to the prior action, and the Siegels were parties to the Court of Claims action.

{¶30} Next, the Siegels argue that the only issue adjudicated in the prior action was whether Ringer was entitled to immunity. In the prior proceeding, the Siegels argued that Ringer had engaged in fraud and spoliation by limiting the autopsy, and as a result, was not entitled to statutory immunity. They further argued that Ringer had acted with malicious purpose, in bad faith, or in a wanton, reckless manner by changing the autopsy consent form. "Bad faith" is defined as "involving actual or constructive fraud or a design to mislead or deceive another." *Siegel*, 2015-Ohio-441, 28 N.E.3d 612, at ¶ 31. In order to determine whether Ringer was entitled to immunity, the court had to decide if Ringer had committed fraud.

{¶31} The premise of the Siegels' fraud claim is that Ringer altered the autopsy form to conceal evidence of malpractice. However, both the Court of Claims and the Tenth District Court of Appeals found that Ringer did not engage in fraud or spoliation in limiting the autopsy. Both courts concluded that Ringer instructed Smith to complete the autopsy form in accordance with his orders, the purpose of the autopsy was to determine the cause of death, Ringer did not mislead or deceive the Siegels, and Ringer did not act with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶32} In order to prove fraud, the Siegels must show "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Wiley v. Good Samaritan Hosp.*, 1st Dist. Hamilton Nos. C-030131 and C-030181, 2004-Ohio-763, ¶ 9, quoting *Burr v. Stark*

*Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶33}  Because the issue of whether Ringer altered the autopsy form in an attempt to deceive or mislead the Siegels was directly litigated and decided in the previous action, the trial court correctly applied collateral estoppel to prevent the Siegels from relitigating whether Ringer had altered the autopsy form to mislead the Siegels.  Accordingly, we must overrule the Siegels' third and fourth assignments of error.

## Denial of Motions

{¶34}  In their fifth assignment of error, the Siegels claim that the trial court abused its discretion by denying their motion to compel discovery and their motion to postpone consideration of the summary-judgment motions to allow for adequate discovery.  Specifically, the Siegels sought additional discovery regarding the alteration of the autopsy form.  We cannot say that the trial court abused its discretion, because the Siegels were provided ample opportunities for discovery, including taking depositions of Ringer, Smith, and Beckman.

{¶35}  Moreover, the Tenth District Court of Appeals rejected this argument when the Siegels alleged that the Court of Claims had unreasonably restricted discovery in that action.  The Tenth District found that the Siegels had been allowed to depose Ringer regarding the allegations of fraud and spoliation.  *Siegel*, 2015-Ohio-441, 28 N.E.3d 612, at ¶ 26.  And, in fact, the Court of Claims afforded the Siegels "wide berth in seeking information" to support the allegations of fraud and spoliation by Ringer.  *Id.*  Accordingly, we overrule this assignment of error.

## Constitutionality of the Immunity Statutes

{¶36}  In their sixth and final assignment of error, the Siegels argue that the immunity statutes unconstitutionally deprived them of the right to a jury trial in the Court of Claims.  The Siegels raised this exact issue in their appeal to the Tenth

13

District Court of Appeals. The court overruled the assignments of error, concluding that the Siegels had waived the issue by failing to request a jury or object to the statutory scheme in the Court of Claims. *Id.* at ¶ 20. The court further found that the Ohio Supreme Court had rejected the Siegels' arguments in *Conley v. Shearer*, 64 Ohio St.3d 284, 595 N.E.2d 862 (1992). *Id.* Because this issue was litigated and decided by the Tenth District Court of Appeals, the Siegels are collaterally estopped from relitigating the issue. *See Mitchell*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, at ¶ 14. Therefore, we must overrule this assignment of error.

{¶37} The judgment of the trial court is affirmed

Judgment affirmed.

**MYERS** and **MILLER, JJ.,** concur.

Please note:

This court has recorded its own entry this date.